UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CINCINNATI INSURANCE COMPANY,

                                   Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                                    13-CV-1000S

ROY'S PLUMBING, INC., *et al*,

                                   Defendants.

## I. INTRODUCTION

Presently before the Court in this insurance coverage dispute are the parties' cross-motions for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 38, 41.)  Plaintiff, Cincinnati Insurance Company, seeks a judgment declaring that it need not defend and indemnify Defendant, Roy's Plumbing, Inc., in an underlying litigation.  Defendant seeks a judgment declaring that Plaintiff has a duty to defend and indemnify it in the underlying litigation, including payment of defense costs spent to date.

For the reasons discussed further below, Plaintiff's motion for summary judgment is granted.  Defendant's motion for summary judgment is denied.

## II. BACKGROUND[1]

Defendant-insured is in the business of plumbing, heating, and cooling in Niagara Falls, New York.  Plaintiff-insurer is an Ohio-based insurance company, which issued a liability insurance policy to Defendant effective during the relevant period.  The parties'

---

[1] The material facts in this case are largely undisputed; they are derived principally from the parties' Local Rule 56.1 Statements, the parties' declarations and exhibits attached thereto, and the pleadings from this action and the Underlying Litigation.

insurance coverage dispute arises out of litigation pending in the Supreme Court of Niagara Falls County, New York, captioned <u>Joann Abbo-Bradley, et al., v. City of Niagara Falls, et al.</u>, index number 146816 (the "Underlying Litigation").  (<u>See</u> Docket No. 40-1, Second Amended Complaint in <u>Joann Abbo-Bradley, et al., v. City of Niagara Falls, et al.</u> (the "Underlying Complaint").)   Plaintiffs in the Underlying Litigation (the "Underlying Plaintiffs") allege injuries due to, *inter alia*, "wrongful dumping of toxic substances [and] the negligent and ineffective remediation of such contamination . . . ." (<u>Id.</u> at ¶ 2.)   The Underlying Plaintiffs are three families currently residing near Love Canal, who brought the Underlying Litigation alleging personal injury, property damage, and loss of companionship.  They seek money damages (including punitive damages) and "equitable relief in the form of complete remediation of the contamination within, around, and under their properties as well as the establishment of a medical monitoring trust fund on [their] behalf."  (<u>Id.</u> at ¶ 6.)[2]

As relevant here, the Underlying Plaintiffs allege that Defendant, while working as a contractor in January 2011, "negligently performed inspections and construction work at homes near the Love Canal site . . . in connection with" "a multiyear program of sewer refurbishment in the Love Canal area, which includes sewer replacement, root and debris removal, trenching, pipelining, manhole rehabilitation, leaky joint grouting, cross connection identification and removal, and sewer line upgrading."  (<u>Id.</u> at ¶¶ 115, 118.)   Specifically, Defendant "or [its] agents, employees, representatives or contractors—working on Colvin Boulevard within 250 feet of the northern boundary of the Love Canal containment area—recklessly, negligently, and/or carelessly disturbed,

---

[2] For additional information on the Underlying Litigation and the background of Love Canal, <u>see, e.g.</u>, <u>Abbo-Bradley v. City of Niagara Falls</u>, No. 13-CV-487-JTC, 2013 WL 4505454 (W.D.N.Y. Aug. 22, 2013).

exposed, and discharged a substantial amount of contaminated sediment."   (Id. at ¶ 122.)  These alleged actions "resulted in the discharge of myriad hazardous chemicals onto and into the property and homes of the [Underlying Plaintiffs]" (id. at ¶ 123), causing exposure to "highly dangerous chlorinated organic compounds, halogenated hydrocarbons, and certain 'signature' Love Canal contaminants, including but not limited to non-aqueous phase liquids ('NAPL'), a toxic chemical 'stew'" (id. at ¶ 124).

The Underlying Plaintiffs allege that Defendant "knew or should have known of the possibility of the presence of dangerous chemicals within the sewers and/or otherwise in proximity to [the] work" (id. at ¶ 126), but "failed to exercise due care to prevent the possibility of the escape of such chemicals" (id. at ¶ 127), "recklessly, negligently, and/or carelessly caused the release of such chemicals [and] . . . failed to adequately warn area residents" (id. at ¶ 128), and "knew or should have known of the environmental and health risks posed by the presence of the NAPL residue and other chemicals on the roadway and in the residential sewer or drain system, and should have exercised due care by taking appropriate remedial action to contain the toxins" (id. at ¶ 130).  They further allege that Defendant "recklessly, negligently, and/ or carelessly, and with callous disregard for the health and safety of [the Underlying Plaintiffs] and others in the surrounding community, applied water from high pressure hoses to wash the roadway and storm drains, thus further dispersing the contaminants onto and into [the Underlying Plaintiffs'] property and homes" (id. at ¶ 131), and were "reckless, negligent, and/or careless in that they wrongfully allowed pressure to continue to build within the sewer system, and left the Colvin Boulevard trench open for weeks following the January 11, 2011 incident, thus allowing contaminants to further escape from the

sewers and onto and into [the Underlying Plaintiffs'] property and homes" (id. at ¶ 132).

As to causation, the Underlying Complaint alleges that "[e]ach of [the Underlying Plaintiffs]' personal injuries and property damages have been caused or contributed to by exposure to hazardous substances, pollutants, and contaminants that have been released into the environment from the Love Canal facility."  (Id. at ¶ 161.)

In March 2013, Defendant learned that it might be named as a defendant in the Underlying Litigation and advised Plaintiff.  On April 22, 2013, Plaintiff sent a brief email disclaiming coverage and invoking the pollution exclusion.  On May 28, 2013, Plaintiff followed up with a more formal coverage disclaimer letter, again noting the pollution exclusion, as well as several additional grounds that it claimed precluded coverage. Defendant did not respond to the letter disclaiming coverage.  On August 7, 2013, Plaintiff sent Defendant a second letter, requesting that Defendant withdraw the claim for coverage and stating that, if it did not do so, Plaintiff would file suit for a declaratory judgment.  Defendant informed Plaintiff that it would not withdraw its claim for coverage, and Plaintiff filed the present suit on October 3, 2013, seeking a declaration that the Policies provide no coverage in relation the Underlying Litigation.  (Docket No. 1.)  On October 25, 2013, Defendant filed an answer and counter claim, seeking a declaration that Plaintiff must defend and indemnify it in the Underlying Litigation.  (Docket No. 7.)

### III. LEGAL STANDARDS

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010).  A court's function on a summary

judgment motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Kaytor, 609 F.3d at 545 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2003) cert. denied, 540 U.S. 811 (2003) (quoting Anderson, 477 U.S. at 248).  Where, as here, both parties move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, 249 F.3d 115, 121 (2d Cir. 2001).

## IV. DISCUSSION

The policies issued to Defendant by Plaintiff, and in effect during the relevant period, provide coverage for damages to persons or property occurring in the ordinary course of Defendant's business, with certain exclusions.  As relevant here, the policies contain a "Total Pollutant Exclusion," which states, in part:

This insurance does not apply to:

f. Pollutant

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

(Docket Nos. 40-5 at 87, 40-6 at 85 (the "Policies")).  The Policies go on to define the term "pollutant":

"Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and

waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(Docket Nos. 40-5 at 62, 40-6 at 63.)  The Policies are governed by New York law.  (Id.)

## A.      Extent of Coverage

In support of the instant motion, Plaintiff claims that the Policies' Total Pollutant Exclusion is clear and unambiguous, and that the issue of whether it excludes coverage arising out of the Underlying Litigation may be resolved in the affirmative, as a matter of law, based upon the undisputed facts.   Defendant argues that the Total Pollutant Exclusion is ambiguous, and that, because those ambiguities should be construed against the insurer, Defendant is entitled to indemnification and defense in the Underlying Litigation.

"Under New York law, '[a]mbiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'"   U.S. Specialty Ins. Co. v. LeBeau, Inc., 847 F. Supp. 2d 500, 503 (W.D.N.Y. 2012) (quoting 40 Gardenville, LLC v. Travelers Prop. Cas. of America, 387 F. Supp. 2d 205, 212 (W.D.N.Y. 2005)).  Ambiguities in insurance coverage are to "be resolved in favor of the insured and against the insurer."   Brabender v. Northern Assurance Co. of America, 65 F.3d 269, 273 (2d Cir. 1995); Handelsman v. Sea Ins. Co., Ltd., 85 N.Y.2d 96, 101, 623 N.Y.S.2d 750, 647 N.E.2d 1258 (1994).  And, when an exclusion clause is relied on to deny coverage, it is the insurer's burden to demonstrate the allegations of the underlying claims allege damages attributable to the specific conduct for which coverage has been excluded.   Consol. Edison Co. of New York v. Allstate Ins. Co., 98 N.Y.2d 208, 218, 774 N.E.2d 687 (2002).

1.  <u>The Total Pollutant Exclusion is Not Overly Broad</u>

First, Defendant argues that the Total Pollutant Exclusion is ambiguous because it is overly broad.  Defendant contends that the insurance policy was intended to provide coverage to Defendant during the course of its regular business, and that a broad construction of the Total Pollution Exclusion would effectively negate that coverage. Because Plaintiff was aware that Defendant's business included the handling of sewage, and because the purpose of the policy was to indemnify and defend Defendant for personal injury or property damage arising out of Defendant's normal course of business, Defendant argues that the Policies should be construed to cover the injuries in the Underlying Litigation.  Setting aside momentarily the specific issue of whether injuries arising from sewage are excluded under the Policies, this Court looks first to whether the Total Pollutant Exclusion is ambiguous or overly broad in the context of the Underlying Litigation.

New York courts have found similar pollutant exclusions to be unambiguous, but generally limit their application to "those cases where the damages alleged are truly environmental in nature, or where the underlying complaint alleges damages resulting from what can accurately be described as the pollution of the environment."  <u>Belt Painting Corp. v. TIG Ins. Co.</u>, 293 A.D.2d 206, 210-11, 742 N.Y.S.2d 332, 335-36 (2d Dep't 2002), aff'd, 100 N.Y.2d 377, 795 N.E.2d 15 (2003).  This limited application reflects a "common-sense construction," as set forth in <u>Belt Painting</u>, which found that such clauses exclude coverage only in cases of environmental pollution, as opposed to a "literal approach" to pollution exclusions, which might result in exclusion of an "injury caused by slip and fall on [a] grease spill."  <u>See</u> <u>id.</u>, (citing <u>Westview Associates v. Guar.</u>

Nat. Ins. Co., 95 N.Y.2d 334, 740 N.E.2d 220 (2000) and Roofers' Joint Training,

Apprentice & Educ. Comm. of W. New York v. Gen. Acc. Ins. Co. of Am., 275 A.D.2d

90, 713 N.Y.S.2d 615 (4th Dep't 2000)).   It also reflects the traditional policy behind

pollution exclusions, which originated to prevent industrial polluters from spreading the

risk of environmental pollution to the insurance industry.   See Autotronic Systems, Inc.

v. Aetna Life and Casualty, 89 A.D.2d 401, 456 N.Y.S.2d 504, 505-06 (3d Dep't 1982)

("[t]he clear purpose of the statutorily required exclusion is to strengthen New York's

environmental protection standards by imposing the full risk of loss due to personal

injury or property damage from pollution upon the commercial or industrial enterprise

that does the polluting. . ."); Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47

F.3d 34, 37 (2d Cir. 1995) ("As a threshold matter, we believe that it is appropriate to

construe the standard pollution exclusion clause in light of its general purpose, which is

to exclude coverage for environmental pollution.").

    For example, construing a similar exclusion in Town of Harrison v. National

Union Fire Ins. Co. of Pittsburgh, Pa., the New York Court of Appeals could "detect no

ambiguity regarding the scope of the pollution exclusions."   89 N.Y.2d 308, 316, 653

N.Y.S.2d 75, 675 N.E.2d 829 (1996).   The insured in that case argued that the pollutant

exclusion should not apply because the insured itself was not responsible for the illegal

dumping that caused the underlying injuries.   Id.   Finding that the exclusion did preclude

coverage, the court noted that "it is evident that coverage is unavailable for any claim

involving the discharge or dispersal of any waste, pollutant, contaminant or irritant

*regardless of the cause or source of that claim*," and that "coverage is unambiguously

excluded for claims generated by the dumping of waste materials onto [plaintiff's]

propert[y] . . . , irrespective of who was responsible for these acts" or where the pollutants came from.  Id. (citations omitted, emphasis added).

Defendant, who is in the plumbing, heating, and cooling business, does not necessarily fit the mold of a traditional industrial polluter, and the actions that led to Defendant's inclusion in the Underlying Litigation were part of Defendant's ordinary business of repairing sewer systems.  Nevertheless, the allegations in the Underlying Complaint fall squarely within the context of environmental pollution.  As described further below, the injuries alleged include the severe health issues and property devaluation that arise from exposure to toxic chemicals.  (See Underlying Complaint at ¶¶ 1, 3.)  And although the Underlying Complaint sometimes refers to damages arising generally from "hazardous substances" (id. at ¶ 161)—which is a broad category—the numerous specific allegations, including the description of injuries, make clear that such "substances" are traditional environmental pollutants, which are harmful and irritating, and therefore fall within the unambiguous terms of the exclusion as previously interpreted by New York courts.  Further, although Defendant may have had no part in the original placement of toxic chemicals in the area, the claims would still be excluded pursuant to the clause, because pollution exclusions apply "irrespective of who was responsible" for generating the pollutants.  Town of Harrison, 89 N.Y.2d at 316, 675 N.E.2d 829.

Accordingly, this Court finds that the Total Pollutant Exclusion in the Policies is unambiguous, not overly broad, and that it applies to the claims at issue in the Underlying Litigation regarding hazardous substances.

2. <u>Sewage May Be Construed as a Pollutant</u>

Next, Defendant argues that at least some of the injuries alleged in the Underlying Litigation are the result of sewage, not of hazardous waste, and that injuries caused by sewage are not excluded under the Total Pollutant Exclusion.  Although the word "sewer" appears frequently in the Underlying Complaint, the word "sewage" does not.  Instead, the Underlying Plaintiffs allege that Defendant's negligent work on the sewer resulted in the discharge of "contaminated sediment" and "myriad hazardous chemicals."  (Underlying Complaint at ¶¶ 122-23.)  Defendant contends that the absence of the word "sewage" is irrelevant, because the "allegations assert at the core that exposure to the same sewage that [Defendant] deals with every day caused" the relevant injuries, and whether those injuries were ultimately "related to exposure to pollutants, as opposed to exposure to simple sewage," has not yet been established.  (Docket No. 41-7 at 14.)  Even assuming that Defendant is correct, and that the injuries were caused to some extent by "simple sewage," this argument still fails.

Two New York state court decisions regarding sewage are instructive.  In <u>Incorporated Village of Cedarhurst v. Hanover Insurance Co.</u>, the plaintiff-insured had been sued for property damage and personal injuries allegedly caused by the overflow of raw sewage from the municipal sewer system.  89 N.Y.2d 293, 653 N.Y.S.2d 68, 675 N.E.2d 822 (1996).  The New York Court of Appeals, stating that "the applicability of the [policy] exclusions depends on the nature of the injury alleged in the underlying complaints, not exclusively on the nature of the substance released," held that the village's insurer could not disclaim coverage under a pollution exclusion, since the "risk of liability faced by the Village allegedly arose from the flood-like nature of the discharge

rather than its 'polluting' character . . ." Id. at 300, 653 N.Y.S.2d 68, 675 N.E.2d 822. The court suggested that, if it was ultimately "established that the injuries sustained were contamination caused by a discharge of sewage, or by the irritating or contaminating nature of the sewage," then the pollutant exclusion would apply and the insurer would be under no obligation to indemnify. Id.

Similarly, in City of Kingston v. Harco National Insurance Co., the Appellate Division found that a pollutant exclusion did not preclude the possibility of coverage for injuries resulting from a ruptured sewer main when "at least some of the damages incurred" were "arguably . . . attributable to the force of the rushing of water, variously described as a 'flood' or 'river' flowing like 'Niagara Falls,' that passed through and over defendants' respective properties." 46 A.D.3d 1320, 1322, 848 N.Y.S.2d 455, 457 (3d Dep't 2007). The sewage was, again, not considered to be a pollutant within the terms of the exclusion because "the erosion and structural damage alleged in the form of shifted foundations and cracked interior walls would not have occurred 'but for' the presence of raw sewage." Id. (holding that the insurance company had a duty to defend in the underlying actions and that the issue of the duty to indemnify must await the proof at trial).

Looking to the nature of the injuries alleged in the Underlying Litigation, as the courts did in Village of Cedarhurst and City of Kingston, the bodily injuries include "birth defects, chromosomal abnormalities, bone marrow abnormalities, cardiac conditions, pulmonary symptoms, unexplained fevers, skin conditions, behavioral problems, learning disabilities, and loss of teeth." (See Underlying Complaint at ¶ 1.) Property injuries include allegations that the area has "an unnatural absence of worms, mice, and

other normal biodata," is "strewn with dead trees and grass," and that "[the Underlying Plaintiffs]' and their neighbors' pets are sick" and "[d]ead animals are a common sight throughout the area," all of which has lowered property values.  (<u>Id.</u> at ¶ 3.)  There are no allegations regarding flooding, structural damage, or erosion.  Instead, the Underlying Complaint alleges the cause of "[e]ach of [the Underlying Plaintiffs]' personal injuries and property damages" to be "exposure to hazardous substances, pollutants, and contaminants that have been released into the environment from the Love Canal facility."  (<u>Id.</u> at ¶ 161.)

Moreover, the fact that "sewage" is not specifically named in the Total Pollutant Exclusion is of no moment.  The exclusion defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including . . . chemicals [and] waste."  (<u>See</u> Policies at 62, 63.)  Under this broad definition, and under New York law, it is the substance's ability to cause injuries resulting in contamination and irritation, rather than the specific identification of the substance in the exclusion, that is significant.  <u>Steuben Contracting, Inc. v. Emp'rs Ins. of Wausau</u>, 975 F. Supp. 479, 482-83 (W.D.N.Y. 1997) (pollutant exclusion applied, despite petroleum not being specifically named in the exclusion, due to petroleum's "'polluting' character").

Therefore, even if Defendant is correct and the Underlying Plaintiffs intended to allege that some of their injuries were brought about by exposure to fecal matter and sewage, rather than toxic chemicals, the Total Pollutant Exclusion would nevertheless apply because it is the "polluting" character of the "contaminated sediment" and "myriad hazardous chemicals" that has given rise to the Underlying Litigation, and not their "flood-like" character.  <u>See</u> <u>Inc. Vill. of Cedarhurst</u>, 89 N.Y.2d at 300, 653 N.Y.S.2d 68,

675 N.E.2d 822.

**B.    Duty to Defend**

Having found that the policy clearly and unambiguously excludes coverage for the injuries alleged in the Underlying Complaint, this Court must examine the broader question of whether Plaintiff is obligated to provide Defendant with a defense in the Underlying Litigation.

It is well settled that an insurer's duty to defend its insureds is broader than its duty to provide coverage, and that regardless of whether it is ultimately obligated to indemnify an insured, "an insurer will be called upon to provide a defense whenever the allegations of the complaint 'suggest . . . *a reasonable possibility* of coverage.'" BP Air Conditioning Corp. v. One Beacon Ins. Grp., 8 N.Y.3d 708, 714, 840 N.Y.S.2d 302, 871 N.E.2d 1128 (2007) (emphasis added) (quoting Auto. Ins. Co. of Hartford v. Cook, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176, 850 N.E.2d 1152 (2006)).   Thus, "[t]he duty to defend . . . is derived from the allegations of the complaint and the terms of the policy. If [a] complaint contains any facts or allegations which bring the claim even potentially within the protection purchased, the insurer is obligated to defend." Technicon Elecs. Corp. v. Am. Home Assur. Co., 74 N.Y.2d 66, 73, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989).   "When an insurer seeks to disclaim coverage on the further basis of an exclusion, as it does here, the insurer will be required to 'provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation.'" Auto. Ins. Co. of Hartford, 7 N.Y.3d at 137, 818 N.Y.S.2d 176, 850 N.E.2d 1152 (quoting Allstate Ins. Co. v. Mugavero, 79 N.Y.2d 153, 159, 581

N.Y.S.2d 142, 589 N.E.2d 365 (1992)).

The Underlying Complaint alleges only injuries arising in the context of traditional environmental pollution and caused by substances of a polluting character.  This Court finds that "[t]he theory of liability and the alleged instrumentality of injury are clear, and not subject to alternate interpretations," see U.S. Specialty Ins. Co., 847 F. Supp. 2d at 507, and that the allegations, "on their face, do not bring the case within the coverage of the policy."  See Tartaglia v. Home Ins. Co., 240 A.D.2d 396, 397, 658 N.Y.S.2d 388 (2d Dep't 1997).  Because the injuries alleged in the Underlying Complaint consist solely of "'[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of 'pollutants'" per the Total Pollutant Exclusion, this Court further finds that there is no "reasonable possibility" of coverage, BP Air Conditioning Corp., 8 N.Y.3d at 714, 840 N.Y.S.2d 302, 871 N.E.2d 1128, and that Plaintiff has demonstrated that it is not obligated to provide a defense in the Underlying Litigation.[3]

## C.    Timing of the Disclaimer

Defendant also makes a general argument (without citing to dates or documents) that Plaintiff's denial of coverage was not timely and is therefore invalid.  (See Docket No. 41-7 at 22.)   However, Defendant's own supporting documents demonstrate that Plaintiff's initial disclaimer of coverage occurred on April 22, 2013 (Docket No. 41-5 at 115), less than one week after Plaintiff received a copy of the complaint in the Underlying Litigation (Docket No. 41-2 at ¶15).   A formal denial of coverage letter

---

[3] Plaintiff contends that several other exclusions to the Policies also preclude coverage as to the Underlying Litigation, including the "Expected or Intended Injury Exclusion," the "Known Loss Exclusion," and the "bodily injury" exclusion.  (See Docket No. 37.)  Because this Court finds that the Total Pollutant Exclusion precludes indemnification and defense, it does not reach Plaintiff's additional arguments.

followed on May 28, 2013.  (Docket No. 1-4.)

Based on these undisputed facts, there is no basis for Defendant's argument that Plaintiff's denial of coverage was not timely.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted. Defendant's cross-motion for summary judgment is denied.

## VI. ORDERS

IT HEREBY IS ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 38) is GRANTED as to the declaration that Plaintiff is not obligated to indemnify or defend Defendant in the Underlying Litigation, and DENIED as to attorneys' fees;

FURTHER, that Defendant's Motion for Summary Judgment (Docket No. 41) is DENIED;

FURTHER, that Defendant's Counter Claims (Docket No. 7) are dismissed;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: June 10, 2016
Buffalo, New York

/s/William M. Skretny
 WILLIAM M. SKRETNY
United States District Judge